UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:                                      )
VITAMINS ANTITRUST LITIGATION               )
                                            )   Misc. No. 99-197 (TFH)
                                            )   MDL 1285
                                            )
This Opinion relates to:                    )
                                            )          FILED
LIVENGOOD FEEDS, INC.,                      )
                                            )      FEB 18 2004
           Plaintiffs,                      )
                                            )   NANCY MAYER WHITTINGTON, CLERK
      v.                                    )        U.S. DISTRICT COURT
                                            )
MERCK KGaA.,                                )
                                            )
           Defendants.                      )

**MEMORIALIZING OPINION**
**Re: Final Approval of Biotin and Niacin Defendants Settlements**

Pending before the Court is class plaintiffs' Motion pursuant to Fed. R. Civ. P. 23(e) and 54 for Final Approval of Settlement Between Class Plaintiffs and Defendants Sumitomo Chemical Co., Ltd., Sumitomo Chemical America, Inc., Tanabe Seiyaku Co., Ltd., Tanabe USA, Inc., Lonza Group Ltd., Lonza AG, Lonza Inc., Degussa AG, Degussa Corp., Nepera Inc., Reilly Industries, Inc., and Reilly Chemicals, S.A. (hereinafter, the "Biotin and Niacin Defendants") and for Entry of Final Judgment. Upon careful consideration of class plaintiffs' Motion, the representations made at the February 18, 2004 hearing on final approval, and the entire record herein, and in accordance with the Court's February 18, 2004 bench opinion, class plaintiffs' Motion for Final Approval and for Entry of Final Judgment is granted.

### I. BACKGROUND

The proposed settlements are the fifth, sixth, seventh and eighth partial class settlements

arising from litigation surrounding a worldwide conspiracy or conspiracies to fix prices and allocate markets for the sale of bulk vitamins. On October 14, 2003, the Court preliminarily approved the proposed settlements with the Biotin and Niacin Defendants and certified the settlement class. The Vitamin Products Class consists of all persons or entities who directly purchased vitamins A, C, E, B1, B2, B3, B5, B6, B9, B12, H, beta carotene, astaxanthin, canthaxanthin and/or vitamins premixes for delivery in the United States from any of the Defendants or their co-conspirators from January 1, 1988 through December 31, 1998 (excluding all governmental entities, and defendants, their co-conspirators, and their respective subsidiaries and affiliates). The Settlement Agreements provide that the Biotin and Niacin Defendants will make a cash payments totaling $105,930,000.00 plus interest for the benefit of the Vitamin Products Class.

The Settlement Agreements will dismiss all claims against the Biotin and Niacin Defendants. The release does not include any potential or current claims based upon purchases of vitamin products sold outside the United States or for delivery outside the United States, nor does it include claims based on indirect purchases of vitamins products.

## II. DISCUSSION

Approval of the proposed class action settlement lies within the discretion of this Court. United States v. District of Columbia, 933 F. Supp. 42, 67 (D.D.C. 1996). Fed. R. Civ. P. 23(e) provides that:

> A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Fed. R. Civ. P. 23(e). The Rule 23 requirements are fully consistent with the long-standing judicial attitude favoring class action settlements. Mayfield v. Barr, 985 F.2d 1090, 1092 (D.C. Cir. 1993). "The Court must eschew any rubber stamp approval . . . yet, at the same time, must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." United States v. District of Columbia, 933 F. Supp. at 47. The exercise of this discretion, however, is constrained by the "principle of preference" favoring and encouraging settlements in appropriate cases. Pigford v. Glickman, 185 F.R.D. 82, 103 (D.D.C. 1999).

There is no single test in this Circuit for determining whether a proposed class action settlement should be approved under Rule 23(e). Pigford, 185 F.R.D. at 98. Generally, in determining whether settlement should be approved, courts consider whether the proposed settlement "is fair, reasonable, and adequate under the circumstances and whether the interests of the class as a whole are being served if the litigation is resolved by settlement rather than pursued." Manual for Complex Litigation (Third), § 30.42 at 238 (1995). In making this determination, courts in this Circuit have examined the following factors: (a) whether the settlement is the result of arm's length negotiations;[1] (b) the terms of the settlement in relation to the strength of plaintiffs' case;[2] (c) the status of the litigation at the time of settlement;[3] (d) the

---

[1] See Thomas v. Albright, 139 F.3d 227, 231-233 (D.C. Cir.), cert. denied, 525 U.S. 1016, 1033 (1998); Pigford, 185 F.R.D. at 99-101.

[2] See Thomas, 139 F.3d at 231; Pigford, 185 F.R.D. at 98.

[3] See In re National Student Marketing Litig., 68 F.R.D. 151, 155 (D.D.C. 1974); Osher v. SCA Realty I, 945 F. Supp. 298, 304 (D.D.C. 1996); Pray v. Lockheed Corp., 644 F. Supp. 1289, 1290 (D.D.C. 1986); see also Moore v. National Assoc. of Sec. Dealers, Inc., 762 F.2d 1093, 1106 (D.C. Cir. 1985).

3

reaction of the class;[4] and, (e) the opinion of experienced counsel.[5]

## A. Arm's Length Negotiations

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." Manual for Complex Litig., at § 30.42. According to plaintiffs' counsel, the Biotin and Niacin Defendants' settlements were reached through "extensive arm's length negotiations, undertaken in good faith, and after years of extensive factual investigation, legal analysis, discovery, motion practice, and trial preparation." Pl's Memo. at 10. This Settlement was negotiated by very experienced antitrust and class action attorneys. Because there is nothing in the course of the negotiations or the face of the Settlement that "disclose[s] grounds to doubt its fairness," id. (citing Manual for Complex Litig., at § 30.41), the Court finds that the Settlement at issue was the result of arms' length negotiations and is thus presumptively fair, adequate and reasonable.

## B. Terms of Settlement

Under the terms of the Settlement Agreements, the Biotin and Niacin Defendants have paid $105,930,000.00 plus interest to settle the claims of the Vitamins Products Class. The settlement amount is significant compared to past settlements in this litigation. The first class settlement in this case involved defendants that held over ninety percent of U.S. vitamin sales,

---

[4]See Thomas, 139 F.3d at 231-33; In Re Nat'l Student Marketing Litig., 68 F.R.D. at 155; Osher, 945 F. Supp. at 304; Stewart v. Rubin, 948 F. Supp. 1077, 1087 (D.D.C. 1996), aff'd, 124 F.3d 1309 (D.C. Cir. 1997).

[5]See Stewart, 948 F. Supp. at 1087; McGiness v. Parness, 1989 WL 29817, at *1 (D.D.C. Mar. 22, 1989).

and resulted in a payment by those companies of $1.05 billion before opt outs resulting in a distribution to the class after opt outs of $247 million plus $123 million in attorneys fees. The Defendants involved in these settlements possessed less than 3.5 percent of the global market share for all vitamins, yet the Vitamins Products Class will receive $106 million from the current settlements. Furthermore, the settlements represent over 75 percent of the approximately $137,000,000 in U.S. purchases made by the Vitamins Products Class from the Biotin and Niacin Defendants.

Given the complexities of proof in antitrust cases and the ordinary risks and delays inherent in complex antitrust litigation, the Settlements appears to provide a significant benefit to the Class. Defendants would also appear to benefit from an early and definite resolution to this dispute. Therefore, after weighing the possibilities of recovery and the risks and expenses of protracted litigation for both sides, the Court finds that the instant Settlement falls within the range of fair, adequate and reasonable settlements deserving of final approval.

## C. Status of Litigation at Settlement

The Settlement is a significant benefit to the Class Plaintiffs, especially at this point in the litigation. The Court has not yet ruled on the Biotin and Niacin Defendants' summary judgment motions challenging whether they were involved in an all-vitamins conspiracy. The Biotin and Niacin settlements provide the Vitamins Products Class substantially more recoveries than they would have received if the Court ruled in Defendants favor on those motions. On the other hand, if the Court held that an all-vitamins conspiracy did exist, the Biotin and Niacin Defendants would have been exposed to liability for damages in an amount that is exceedingly larger than the $106 million they agree to pay in these settlements.

The Settlement Agreements are a result of years of investigation and litigation. Class Plaintiffs uncovered the alleged conduct among bulk vitamin producers before the federal cooperation agreements became public and before any defendants confessed to their wrongdoing. These settlements were reached after the cases between the parties were fully litigated, yet before the trials began. Therefore, these Settlements do not come too early to be suspicious nor too late to be a waste of resources. It is in fact at a desirable point in the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense, and litigation.

**D. Reaction of Class to Settlement**

One of the factors generally considered in determining the reasonableness of a settlement is the reaction of the class. Thomas, 139 F.3d at 231-33; In re Nat'l Student Marketing Litig., 68 F.R.D. at 155; Osher, 945 F. Supp. at 304; Stewart, 948 F. Supp. at 1057. In this case, more than 8,991 notices of this Court's preliminary approval of the Settlement were sent to class members.[6] See Sincavage Aff. at ¶ 2. No objections had been received by Class Plaintiffs or by the Court. See id. at ¶ 6. In addition, no objections were raised at the February 18, 2004 hearing on final approval of these Settlements. There were two exclusion requests, both of which came from

---

[6] Copies of the "Notice of Vitamin Products Settlements with Sumitomo Chemical America, Inc., Sumitomo Chemical Co., Ltd., Tanabe USA, Inc., Tanabe Seiyaku Co., Ltd., Reilly Industries, Inc., Reilly Chemicals, S.A. Lonza Group Ltd., Lonza Inc., Lonza AG, Degussa AG, Degussa Corp., Nepera Inc. and Hearing Thereon" and "Proof of Claims" were mailed on November 19, 2003 by first class mail to all potential members of the Vitamin Products Class to the extent that they could be identified from the database of customers created by the Claims Administrator. Summary notices of the proposed Settlement were also published in The Wall Street Journal on December 8 and December 14, 2003, in Feedstuffs on December 15, 2003, and in Chemical Market Reporter on December 15, 2003. The Notices alerted class members to the time and place of the Court's hearing on final approval of this Settlement and directed them to additional sources of information. See Sincavage Aff. at ¶¶ 2,4. Accordingly, the Court is satisfied that adequate notice of the Settlement and hearing have been provided.

entities who were already excluded from the class as they had previously timely requested exclusion from the Vitamin Products Class. See id. at ¶ 7. Therefore, there has been no substantive opposition to these Settlements.

**E. Opinion of Experienced Counsel**

Counsel in this case are among the best and most experience antitrust litigators in the country. Consequently, their opinion that these Settlements are fair, adequate, and reasonable is deserving of this Court's consideration. Although the Court will not defer blindly to the views of counsel with regard to the adequacy of a settlement, it must consider that the Settlements were reached after several months of arms' length negotiation by experienced counsel and that both counsel and all parties involved view the settlements as reasonable.

### III. CONCLUSION

After considering all of the above mentioned factors, the Court finds that this Settlement is adequate, fair and reasonable. Accordingly, Class Plaintiffs' Motion for Final Approval of Settlements With the Aumitomo, Tanabe, Lonza, Degussa, Nepera, and Reilly Defendants and for the Entry of Final Judgment is granted and final judgment dismissing with prejudice the Biotin and Niacin Defendants is entered. An order will accompany this Memorializing Opinion.

February 18, 2004

Thomas F. Hogan
Chief Judge